**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lawrence BUCHANAN, Defendant–**
**Appellant.**

No. 94–10056.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1994.

Decided July 6, 1995.

John C. Lambrose, Asst. Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Rimantas A. Rukstele, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: TANG, SCHROEDER, and REINHARDT, Circuit Judges.

Opinion by Judge TANG; Partial Concurrence and Partial Dissent by Judge REINHARDT.

TANG, Senior Circuit Judge:

Lawrence Buchanan appeals his eighteen-month sentence, which was imposed after Buchanan pleaded guilty to one count of mail fraud and one count of failure to appear. Specifically, Buchanan contends that the district court erroneously calculated his criminal history score. The government argues that Buchanan cannot challenge his sentence because he knowingly and voluntarily waived his right to appeal his sentence in his plea agreement. We have jurisdiction under 28 U.S.C. § 1291 and find that the waiver of appellate rights contained in Buchanan's plea agreement is unenforceable. We affirm, however, the district court's calculation of Buchanan's criminal history score.

## I. BACKGROUND

In December 1991, Raymond E. Albretsen approached Buchanan for help in disposing of a Toyota 4–Runner so he could claim an insurance loss. Joseph Holmes, an FBI informant, procured a buyer. Buchanan sold the vehicle to that buyer and retained the profit from the sale. Albretsen later reported the Toyota stolen to his insurance company. The insurance company reimbursed him for the claimed loss. In June 1992, Buchan-

an arranged a similar transaction for David A. Brock.

In July 1992, Buchanan was arrested for altering the vehicle identification number ("VIN") of a 1977 Corvette procured from Holmes in 1990. He pleaded guilty to a misdemeanor in Nevada state court and was sentenced to two years of probation in December 1992.

On December 16, 1992 and January 6, 1993, a federal grand jury sitting in Las Vegas returned indictments charging Buchanan with conspiracy and mail fraud. While on probation for the state offense, Buchanan failed to appear for his federal mail fraud and conspiracy trial scheduled for April 5, 1993. He was arrested approximately two weeks later in California and was returned to Nevada for trial. On April 14, 1993, the grand jury indicted Buchanan for failing to appear for trial. One month later, Buchanan made his initial appearance in the district of Nevada on the failure to appear indictment and was released on a personal recognizance bond.

Buchanan entered pleas of guilty to the mail fraud and failure to appear charges on September 22, 1993.[1] In the plea agreement, Buchanan waived the right to appeal his sentence, so long as the sentence was within the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range. The waiver would not apply if there was a departure outside the Guidelines range.

During the September 1993 plea hearing, the district court judge reviewed the charges brought against Buchanan and asked Buchanan whether he understood the contents of his plea agreement. He answered that he understood the plea agreement and the consequences of his guilty plea. The prosecutor read the entire plea agreement out loud in open court.

On January 4, 1994, Buchanan appeared for sentencing. At that hearing, Buchanan orally moved to withdraw his guilty plea on the ground that his original attorneys had

not fully informed him of unfavorable stipulations in the plea agreement. Buchanan specifically complained about the provision in the plea agreement that barred arguments at sentencing for downward departures. During the discussions on that issue, the district court stated that Buchanan "could appeal the sentencing findings." At the close of the hearing, the court delayed sentencing to allow Buchanan to file a motion to withdraw. Buchanan did not file such a motion; instead, on January 20, 1994, the parties filed a modification to the plea agreement that permitted both parties to argue for a departure. As a result of the modification, Buchanan agreed to drop his ineffective assistance of counsel claim.

Buchanan reappeared for sentencing on January 21, 1994. At that hearing, despite the waiver clause in Buchanan's plea agreement, the district court judge explicitly informed Buchanan that he had a right to appeal his sentence. The judge set the base offense level at thirteen and placed Buchanan in criminal history category III. The resulting imprisonment range was 18–24 months. The district court imposed a seventeen-month sentence on the mail fraud charge and a consecutive one-month sentence on the failure to appear charge.

## II. DISCUSSION

On appeal, Buchanan argues that the district court erred in calculating his criminal history score. Before we reach the merits of the sentencing issue, we must first address the government's claim that Buchanan waived his right to appeal when he signed his plea agreement.

### A. Waiver of Right to Appeal

■ We review *de novo* the validity of a waiver of appellate rights. *U.S. v. Bolinger*, 940 F.2d 478, 479 (9th Cir.1991) (citing *U.S. v. Navarro–Botello*, 912 F.2d 318, 320 (9th Cir.1990), *cert. denied*, 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992)).

---

1. Under the terms of the plea agreement, the indictments related to Buchanan's transactions with Brock were dismissed.

■ A defendant may waive the statutory right to appeal his sentence. *Navarro–Botello,* 912 F.2d at 321. However, an express waiver of the right to appeal a sentence is valid only if knowingly and voluntarily made. *Bolinger,* 940 F.2d at 480; *Navarro–Botello,* 912 F.2d at 322. We look to circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily. *See, e.g., Navarro–Botello,* 912 F.2d at 321.

■ In this case, the record sufficiently shows that Buchanan entered into the plea agreement knowingly and voluntarily.[2] Our inquiry into the enforceability of the waiver provision centers on the district court's statements during the January 4, 1994 and January 21, 1994 sentencing hearings, where the district court stated that Buchanan had a right to appeal his sentence.

■ On January 4, 1994, the parties discussed with the court, *inter alia,* whether Buchanan should be allowed to withdraw his guilty plea because of ineffective assistance of counsel. During that discussion, the judge stated:

> Is that really what—what I hear are words that the plea agreement, you know, was the product of ineffective assistance of counsel[?] That raises in the specter of my mind no matter what we do here today, **certainly Mr. Buchanan has a right under Rule 32 to appeal the sentencing findings,** but he also has a right to collaterally attack his conviction under 2255 of Title 28 if he believes it was the product of ineffective assistance of counsel.

At the January 21, 1994 sentencing hearing, the same district court judge explicitly advised Buchanan of his right to appeal.

This time, the record shows that Buchanan acknowledged the court's instruction:

> THE COURT: ... I want to advise you as well that under the provisions of Rule 32 of the Federal Rules of Criminal procedure you have the right to appeal findings which I make today regarding sentencing. To do that, you must file that notice of appeal within ten (10) days of this date. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

This colloquy indicates that Buchanan understood the court's affirmative advice that he had a right to appeal despite the contrary indication in the plea agreement.

Because of the district court judge's statements, Buchanan could have a reasonable expectation that he could appeal his sentence. In *United States v. Munoz–Dela Rosa,* 495 F.2d 253 (9th Cir.1974), the district court judge, at sentencing, incorrectly informed Munoz–Dela Rosa that his federal sentence would run concurrently with a sentence previously imposed by a magistrate. *Id.* at 254. The subsequent written judgment correctly stated that the sentences were to run consecutively. *Id.* We held that, where there is a direct conflict between a trial judge's unambiguous oral pronouncement of sentence and the written judgment, the oral pronouncement must control, even if erroneous. *Id.* at 256. In discussing the *Munoz–Dela Rosa* court's reasoning, we explained, "In *Munoz–Dela Rosa,* the defendant was told to his face that the sentences would run concurrently. He, therefore, had a reasonable expectation that they would run concurrently." *United States v. O'Brien,* 789 F.2d 1344, 1347 (9th Cir.1986).

Similarly, here, the oral pronouncement must control. The district court twice stated that Buchanan had a right to appeal his sentence. Indeed, Buchanan's answer of

2. Buchanan argues that the waiver was not knowing and voluntary because there was no canvass regarding the waiver. His argument is unavailing. The district court need not warn a defendant specifically that he has waived his right to appeal his sentence during either a Fed. R.Crim.P. 11 or Fed.R.Crim.P. 32 colloquy, so long as the record indicates a knowing and voluntary waiver. *United States v. DeSantiago–Martinez,* 38 F.3d 394, 395–96 (9th Cir.1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995). During Buchanan's plea hearing, the district court judge reviewed the charges and asked Buchanan whether he understood the contents of his plea agreement. Buchanan answered that he understood the plea agreement. The prosecutor then read the entire plea agreement out loud in open court. We have held these procedures to be sufficient to find a knowing and voluntary waiver. *See United States v. Michlin,* 34 F.3d 896, 898–99 (9th Cir.1994).

"Yes, sir" to the district court's question of whether he understood that he had a right to appeal indicates Buchanan's expectation that he could appeal his sentence and evinces a misunderstanding of the substance of his plea agreement. We note also that the government did not object to the district court's erroneous statements. Thus, Buchanan could have no reason but to believe that the court's advice on the right to appeal was correct.

Litigants need to be able to trust the oral pronouncements of district court judges. Given the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, we hold that in these circumstances, the district court's oral pronouncement controls and the plea agreement waiver is not enforceable.

We now turn to the merits of Buchanan's appeal.

### B. Calculation of Criminal History Category

■ We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Buenrostro–Torres*, 24 F.3d 1173, 1174 (9th Cir. 1994).

At sentencing, the district court gave Buchanan four criminal history points, placing him in Criminal History Category III. One point was added for a 1987 petty theft conviction, one point for the 1992 state conviction for unlawful alteration of a VIN, and two points for being on probation at the time when he failed to appear for his federal trial.

### 1. Prior state VIN conviction

■ The district court added one point for Buchanan's prior state VIN conviction, pursuant to U.S.S.G. § 4A1.1(c). Buchanan argues that assessing one criminal history point for the state VIN conviction was improper because the state VIN conviction was not a "prior sentence" within the meaning of

U.S.S.G. § 4A1.2(a)(1).[3] Buchanan maintains that the state conviction and the federal charges to which he pleaded guilty are relevant offenses within the definition of U.S.S.G. § 1B1.3, as part of the "same course of conduct" or part of a "common scheme or plan." Because they were relevant, he argues, the conduct that led to the state VIN conviction constituted conduct that was part of the instant federal offense of mail fraud; therefore, the state VIN conviction should not have been used separately to enhance Buchanan's criminal history score.

Buchanan's argument fails, however, because there is an insufficient degree of similarity and connection between the state and federal offenses to make the offenses relevant to each other. Although both the state and federal offenses involved fraud and had a common actor, Joseph Holmes, they are entirely different crimes. The state conviction resulted from a discrete, identifiable illegal act that was not an integral part of the federal offense conduct. Buchanan was charged with mail fraud in the federal indictment. Altering the VIN on a vehicle was not part of the charges in the federal indictment. In addition, the filing of a fraudulent insurance claim was the basis of the federal mail fraud charge, and the vehicle on which Buchanan altered the VIN was not one claimed as stolen to any insurance company. We therefore find the district court properly assessed one criminal history point for the state VIN conviction.

### 2. Failure to appear while on probation

■ While on probation for the state VIN violation, Buchanan failed to appear for trial on the federal mail fraud indictment. At sentencing, the district court judge grouped the two counts together (Count 1 for failure to appear and Count 2 for mail fraud), increased the offense level for the mail fraud count by two points, and added two points to Buchanan's criminal history score for failing to appear while on probation. Buchanan ar-

---

**3.** Section 4A1.2(a)(1) defines "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." Application Note 1 to

§ 4A1.2 further instructs: "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)."

gues that the district court erred in assessing two points to his criminal history score because the "instant offense" here is mail fraud only, and he was not on probation at the time he committed mail fraud. He contends that the failure to appear charge is not part of the "instant offense" because the Guidelines treat failure to appear as an adjustment to the underlying offense.

Buchanan's argument that the failure to appear charge is not part of the instant offense stems from the Guidelines' application notes to U.S.S.G. § 2J1.6. Where the defendant is convicted on both the underlying offense and failure to appear, the failure to appear is treated as an obstruction to the underlying offense under U.S.S.G. § 3C1.1. U.S.S.G. § 2J1.6 comment. (n. 3). Section 3C1.1 provides that the count for the obstruction offense will be grouped with the count for the underlying offense under § 3D1.2(c). U.S.S.G. § 3C1.1 comment. (n. 6); *see also United States v. Lechuga,* 975 F.2d 397 (7th Cir.1992) ("When a defendant has been convicted of an underlying offense and a failure to appear offense at a single trial, the Application Notes to the guidelines explicitly provide that those offenses should be grouped for sentencing.").[4] Because the

failure to appear is treated as an adjustment, Buchanan argues, it is not relevant conduct and therefore cannot be part of the instant offense of mail fraud. Accordingly, Buchanan maintains that he cannot be assessed two criminal history points under U.S.S.G. § 4A1.1(d) because the failure to appear is not part of the "instant offense;" the applicable "instant offense" is mail fraud, and he was not on probation at the time he committed mail fraud.

Buchanan's reading of the Guidelines is incorrect. Regardless of the Guidelines' instructions to treat failure to appear as an adjustment to the underlying offense, the failure to appear remains a separate offense, and Buchanan was indicted separately for failing to appear for trial. *See United States v. Schomburg,* 929 F.2d 505, 506 (defendant need not have been *convicted* of the underlying charge in order to have been convicted of the failure to appear, since the offenses are separate). Because the failure to appear is an offense for which Buchanan was convicted, it remains part of the instant offense.[5]

An analysis of the plain language of § 4A1.1(d) reveals that Buchanan's failure to appear charge, like the mail fraud charge, is part of the "instant offense." Section

---

**4.** Contrary to Buchanan's assertion that *Lechuga* is dispositive here, the Seventh Circuit's decision in *Lechuga* merely affirms the Guidelines' instructions to use a failure to appear offense as an adjustment to the underlying offense. In *Lechuga,* the lower court had used Lechuga's underlying drug conviction to increase his criminal history score during sentencing on his failure to appear. The Seventh Circuit rejected the lower court's sentencing procedure and instead applied the Guidelines' grouping provisions to situations where the defendant is convicted in separate trials of two crimes that would be grouped if they had been consolidated in a single trial. *Lechuga,* 975 F.2d at 400. *Cf. United States v. Schomburg,* 929 F.2d 505, 506 (9th Cir.1991) (use of prior underlying conviction to increase criminal history score for failure to appear sentence was proper because the· two offenses are separate).

**5.** The introductory commentary to Chapter 3, Part D (Multiple Counts), instructing that "counts that are grouped together are treated as constituting a single offense for purposes of the guidelines," does not change our conclusion. The statement refers to the grouping of "substantially identical offense conduct":

> In order to limit the significance of the formal charging decision and *to prevent multiple pun-*

*ishment for substantially identical offense conduct,* this Part provides rules for grouping offenses together. Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines. U.S.S.G. Chap. 3, Part D, intro. comment. (emphasis added). The statement that groupable counts should be treated as a single offense is confined to a particular context. It cannot be read expansively to mean that a groupable offense may not be treated as a separate conviction when calculating the defendant's criminal history score.

The failure to appear charge is grouped with the underlying mail fraud charge because it is an aggravating factor to the mail fraud charge, not because it constitutes substantially identical offense conduct. *See* U.S.S.G. § 2J1.6 comment. (n. 3). Thus, the Guidelines' instruction to treat groupable offenses as a single offense does not apply to a situation where the defendant's failure to appear is used to adjust his underlying conviction.

4A1.1(d) of the Guidelines provides, "Add 2 points if the defendant committed the *instant offense* while under any criminal justice sentence, including probation. . . ." (emphasis added). The application notes to § 4A1.1 more broadly explain that "[t]wo points are added if the defendant committed *any part of the instant offense (i.e. any relevant conduct*) while under any criminal justice sentence, including probation. . . ." U.S.S.G. § 4A1.1 comment. (n. 4). *See generally U.S. v. Smith*, 991 F.2d 1468, 1470–71 (9th Cir. 1993) (the phrase "any part of the instant offense," which is defined by reference to the term "relevant conduct," means conduct that is part of the offense of conviction plus acts that are part of the same general criminal scheme). Although the Guidelines do not explicitly define "instant offense," we can glean guidance from the commentary to § 1B1.3, which refers to the "instant federal offense" as "the offense of conviction." U.S.S.G. § 1B1.3 comment. (n. 8). Such a definition has been accepted by the courts. *See, e.g., U.S. v. Polland*, 994 F.2d 1262, 1269 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1115, 127 L.Ed.2d 425 (1994); *U.S. v. Cox*, 985 F.2d 427, 432 n. 4 (8th Cir.1993). Thus, the failure to appear would be counted in the definition of "instant offense" for purposes of § 4A1.1(d). Buchanan was convicted separately for failing to appear, so the failure to appear is part of the "instant offense."

Finally, we note that, in any case, enhancement of the offense level is separate from the criminal history score. *See, e.g., Schomburg*, 929 F.2d at 506 (citing *United States v. Nelson*, 919 F.2d 1381, 1384 (9th Cir.1990)). Chapters 3 and 4 of the Guidelines serve unique purposes in the Guidelines' sentencing scheme. The enhancement of Buchanan's mail fraud conviction reflects the Sentencing Commission's view that failing to appear for trial obstructs and unduly delays the criminal process. The increase in Buchanan's criminal history score reflects the fact that he committed *a crime* while on probation for another crime. It should not matter for purposes of the criminal history score that the Guidelines call for a grouping of the failure to appear with the underlying conviction. Here, Buchanan failed to appear for trial while on probation for another crime. Thus, it was not impermissible for the district court to use Buchanan's failure to appear conviction both as an enhancement for his mail fraud conviction and as a basis for increasing his criminal history score.

■ Failure to appear remains a separate offense for purposes of calculating a criminal history score even when the Guidelines direct the sentencing court to group the failure to appear charge with the mail fraud charge in calculating an offense level. Buchanan was on probation for the state VIN conviction at the time he failed to appear for trial on federal mail fraud and conspiracy charges, and he was convicted for failing to appear. The failure to appear is part of the "instant offense" for purposes of § 4A1.1(d). Therefore, the district court properly added two points to Buchanan's criminal history score, pursuant to U.S.S.G. § 4A1.1(d).

## III. CONCLUSION

The waiver of right to appeal contained in Buchanan's plea agreement is not binding. Nonetheless, we find that the district court correctly calculated Buchanan's criminal history score and therefore affirm the district court's sentencing judgment.

AFFIRMED.

REINHARDT, Circuit Judge, concurring and dissenting.

I concur in the opinion except with regard to Section II.B.2. In light of the explicit instructions contained in Application Note 3 to U.S.S.G. § 2J1.6 and Application Note 6 to U.S.S.G. § 3C1.1, I cannot agree with the majority's conclusion that the sentence may be affirmed.

The Guidelines specifically require a sentencing court to group a failure to appear conviction with the underlying offense when sentencing a defendant. Under Application Note 3 to U.S.S.G. § 2J1.6 (Failure to Appear):

[I]n the case of a conviction on both the underlying offense and the failure to appear [other than a failure to appear for service of a sentence], the failure to appear

is treated under § 3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense; and the failure to appear count and the count(s) for the underlying offense are grouped together under § 3D1.2(c).

Similarly, Application Note 6 to U.S.S.G. § 3C1.1 states that:

Where the defendant is convicted both of the obstruction offense and the underlying offense, the count for the obstruction offense will be grouped with the counts for the underlying offense under subsection (c) of § 3D1.1 (Groups of Closely Related Counts). The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2–level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

The Guidelines also make clear that when a defendant is convicted of separate offenses that must be grouped during sentencing, only *one* of the convictions may serve as the basis for the sentence—in this case, the mail fraud offense—and the remaining offenses may only be used to adjust the base offense level. As the Introduction to Chapter 3, Part D of the Guidelines provides, "[i]n essence, counts that are grouped together are treated as constituting a *single offense* for purposes of the guidelines." (emphasis added) Because these grouping provisions require us to treat the underlying offense as if it were the only offense of which the defendant was convicted, it is clear that the district court erred in separating the convictions when calculating the criminal history score. Only the mail fraud conviction can be termed the "instant offense" for purposes of this determination.

The majority attempts to overcome the clear Guideline requirements by construing the explanation that the Guidelines provide for grouping offenses in a most unusual manner. The Introduction to Chapter 3, Part 3 states that grouping is generally required in order to avoid sentencing a defendant to additional punishment for "substantially identical offense conduct." The majority infers from this explanation that the Guidelines do not require a sentencing court to group offenses whenever it concludes on its own accord that the offenses are not "substantially identical." In effect, the majority has given the sentencing court the power to ignore the explicit Guideline requirements; even when, as here, the Sentencing Guidelines explicitly require the court to group offenses, a court may choose not to do so if it concludes that they are not substantially similar.

What is even more unfortunate about the majority's holding is that the Guidelines have explicitly foreclosed its conclusion that the conduct in this case is not substantially similar. Section 3D1.2, which governs the grouping of closely related counts, specifically states that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. . . . *Counts involve substantially the same harm within the meaning of this rule . . . [w]hen one of the counts embodies conduct that is treated as* a specific offense characteristic in, or *[an] adjustment to,* the guidelines applicable to another of the counts." U.S.S.G. § 3D1.2(c) (emphasis added). The majority does not question—indeed, it affirms—the district court's decision to treat the failure to appear conviction as an adjustment to the defendant's sentence. Thus, despite the fact that (1) the Guidelines instruct us to treat the failure to appear conviction as an adjustment to the mail fraud conviction, and (2) the Guidelines define a substantially similar offense as a count "that is treated as . . . an adjustment to" the underlying offense, the majority nevertheless concludes that grouping is not required because the conduct at issue is not "substantially identical offense conduct."

Finally, even if I were to agree with the majority that we are free to ignore the grouping requirement in this case, I would nevertheless be forced to dissent because the majority does not apply its own approach consistently; it affirms the district court's decision to group the offenses for purposes of calculating the base offense level *and* its decision to separate them when determining the defendant's criminal history score. The Guidelines provide no support for drawing such a distinction. To the contrary, the plain language of the Introduction to Chapter 3, Part D instructs us that "counts that are

grouped together are treated as constituting a single offense *for purposes of the guidelines.*" Introductory Note (emphasis added). In this case, the district court added two points to the defendant's criminal history score—and thus many months to his sentence—by separating offenses that the Guidelines require to be grouped. Thus, the majority's approach has allowed the sentencing court in this case to accomplish exactly what the Guidelines forbid: impose additional punishment for an offense that the Guidelines define as substantially similar conduct. Accordingly, I respectfully dissent from Section II.B.2 of the majority's opinion.