**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 23 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

VINCENT BAD HEART BULL,

Defendant - Appellant.

No. 98-8059

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 97-CR-099-D)**

---

Submitted on the briefs: *

Richard R. Jamieson, Casper, Wyoming, for Defendant-Appellant.

David R. Freudenthal, United States Attorney for the District of Wyoming, and L. Robert Murray, Assistant United States Attorney, Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **TACHA** , **McKAY** , and **MURPHY** , Circuit Judges.

---

*After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**TACHA** , Circuit Judge

_____

Defendant Vincent Bad Heart Bull was indicted on September 18, 1997, with knowing possession of a firearm after a prior felony conviction in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). He entered a plea of not guilty on September 29, 1997. On November 6, 1997, the United States Attorney filed a Notice of Intent to Seek Enhanced Penalty pursuant to Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Section 924(e) establishes a mandatory minimum sentence of fifteen years for anyone convicted under 18 U.S.C. § 922(g) who has three prior convictions for a violent felony or serious drug offense. Defendant subsequently sought to change his plea, but the trial court rejected the plea and reset the matter for trial. On April 23, 1998, defendant again sought a change of plea. The court accepted a written plea agreement in which defendant pled guilty to the one count indictment.

The court sentenced defendant on July 2, 1998. The government offered six prior convictions of defendant that it believed qualified as violent felonies under 18 U.S.C. § 924(e)(2)(B). The proffered convictions included one each for felony menacing, aggravated assault, intimidating a witness, escape, and two for third degree burglary. The district court found the felony menacing, aggravated assault, and intimidating a witness convictions were "violent felonies" for purposes of § 924(e) and sentenced defendant to 180 months of incarceration.

Defendant appeals his enhanced sentence, claiming that the conviction for intimidating a witness does not constitute a violent felony under the test set forth in <u>Taylor v. United States</u>, 495 U.S. 575 (1990). We take jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm.

As an initial matter, the government contends that defendant waived his right to appeal his sentence when he signed his plea agreement. The written plea agreement states: "Defendant agrees to waive his right to appeal the sentence he receives as a result of this Plea Agreement. However, if the United States appeals the Defendant's sentence pursuant to 18 U.S.C. § 3742(B), the Defendant is released from his waiver." R., Vol. 1, Doc. 47 at 7. "A defendant's knowing and voluntary waiver of the statutory right to appeal his sentence is generally enforceable." <u>United States v. Hernandez</u>, 134 F.3d 1435, 1437 (10th Cir. 1998). However, defendant claims the waiver is unenforceable because the district judge stated at the change of plea hearing that he was accepting the plea but rejecting the part of the agreement that waived defendant's right to appeal. For purposes of this case, we assume, without deciding the issue, that defendant could properly appeal his sentence.

Defendant argues that his conviction for intimidating a witness does not

meet the "violent felony" test for § 924(e) sentence enhancement purposes. [1]

According to defendant, the categorical analysis for determining what constitutes a violent felony established by the Supreme Court in Taylor leads to the conclusion that the witness intimidation conviction at issue is not a violent felony. We review the interpretation and application of sentence enhancements imposed under 18 U.S.C. § 924(e) de novo. See United States v. Romero, 122 F.3d 1334, 1340 (10th Cir. 1997), cert. denied, __U.S.__, 118 S. Ct. 1310 (1998). However, we may affirm the sentence "for reasons other than those relied upon by the district court, provided they are supported by the record." United States v. Myers, 106 F.3d 936, 941 (10th Cir.), cert. denied, 520 U.S. 1270 (1997).

We need not address defendant's argument because, even if his witness intimidation conviction did not count for the sentence enhancement, his 1981 escape conviction from Nebraska clearly constitutes a third violent felony that satisfies § 924(e). In United States v. Moudy, 132 F.3d 618, 620-21 (10th Cir.), cert. denied, __U.S.__, 118 S. Ct. 1334 (1998), we stated that "escape always constitutes" a violent felony under § 924(e)(2)(B). The escape conviction was properly in the record. Thus, regardless of the analysis concerning the witness intimidation conviction, defendant committed three prior violent felonies and was

---

[1]Defendant did not challenge the use of the felony menacing and aggravated assault convictions.

subject to enhanced sentencing under the Armed Career Criminal Act.

Accordingly, we AFFIRM the sentence imposed by the district court.

No. 98-8059,  United States v. Vincent Bad Heart Bull

**McKAY** , Circuit Judge, dissenting:


I respectfully dissent from the majority's approach and its result in this case.

As a threshold issue, I do not think this court can so easily avoid the question of whether Defendant has the right to appeal when the issue is squarely presented to us. The Government argues that this court should dismiss this appeal because Defendant waived his right to appeal the sentence when he entered into the plea agreement. To assess whether Defendant has the right to appeal, I would examine the Rule 11 change of plea hearing in which the district court accepted Defendant's guilty plea. At that hearing, the court clearly stated several times that it rejected the portion of the plea agreement requiring Defendant to waive his right of appeal.   First, after a colloquy between the parties and the court in which Defendant admitted the role of alcohol in his criminal history and in which he clarified that, at sentencing, he would contest whether his prior convictions qualified under the Armed Career Criminals Act, the district court advised Defendant that he would have the right to appeal his sentence if the court accepted his change of plea.    See R., Vol. 3 at 18.   At a later point during the hearing, in warning Defendant that the court would be

bound by the sentencing guidelines, the judge again informed Defendant, "I'm giving you your right of appeal, notwithstanding this plea agreement." Id. at 26-27. The judge then asked Defendant if he understood that "unless your appeal is successful, you'll live with the result of the sentence." Id. at 27. Defendant answered, "Yes," he understood that consequence. Id. Additionally, in telling Defendant what rights he would be giving up by pleading guilty, the judge indicated that Defendant would not be giving up his right to appeal:

> [S]ince I'm going to make sure you have a right to appeal my sentence if you think I've been erroneous in the way I've applied the sentencing guidelines or other statutes . . . with respect to your sentence, then you'll have the right to go to the Tenth Circuit Court of Appeals in Denver and try to get the sentence changed.

Id. at 31. Again, Defendant stated that he understood the significance of what the court had told him about his rights. See id. at 32. Finally, in response to Defendant's plea of guilty, see id. at 44, the judge accepted the plea, finding that it was knowing and voluntary and again instructing Defendant to "remember [that] now you do have your right to appeal the sentence should I accept it, should I sentence you on this charge." Id. at 46. At no time did the Government object to these four statements by the court which unequivocally rejected the part of the plea agreement waiving Defendant's right to appeal the sentence and purported to

- 2 -

reinstate that right to appeal. [1]

It is well established that Rule 11 does not allow a judge to modify a plea agreement once it has accepted that agreement. See United States v. Veri, 108 F.3d 1311, 1315 (10th Cir. 1997) (citing Second, Seventh, and Ninth Circuit cases holding that if a sentencing court accepts a Rule 11(e)(1)(A) or (C) agreement, it is bound by the agreement and may not modify it); United States v. Dean, 80 F.3d 1535, 1541 (11th Cir.) (stating that "acceptance of a defendant's plea agreement [generally] prohibits a district court from modifying that agreement"), modified on reconsideration on other grounds, 87 F.3d 1212 (11th Cir. 1996); United States v. Skidmore, 998 F.2d 372, 375 (6th Cir. 1993) (emphasizing that district court is not authorized to modify plea agreement once it has accepted it). None of these cases, however, speak to the circumstances of this case. Here, the court did not modify or attempt to modify the agreement after acceptance but instead modified the agreement before acceptance, when the court still retained the power to reject the plea agreement. Additionally, in this case Defendant relies on the

_____

[1]Additionally, the court twice informed Defendant at sentencing that it had restored Defendant's right of appeal. First, the court stated that it had restored Defendant's right of appeal "because there are pending objections to the application of the guidelines in this case." R., Vol. 5 at 48. Then, after imposing the sentence, the court told that Defendant: "[Y]ou now have the right of appeal. Even though you waived it in your agreement with the United States, [the court] reject[ed] that provision of the agreement. You can appeal. You can appeal the sentence within ten days from the date of the judgment." Id. at 53.

- 3 -

district court's specific statements refusing to accept the plea with the waiver of Defendant's right to appeal and indicating that it would only accept the plea if Defendant's right of appeal was reinstated.  Finally, the Government made no objection to the court's pre-acceptance modification of the plea agreement.  In light of these distinctions, we must examine whether a defendant may reasonably rely on a district court's statements rejecting the appeal waiver provision which are made before the plea is taken and to which the government does not object.

In United States v. Buchanan, 59 F.3d 914, 917-18 (9th Cir. 1995), the Ninth Circuit concluded that a defendant's waiver of his right of appeal was unenforceable because the district court's oral pronouncements at sentencing concerning the right to appeal trumped the written plea agreement and because the government had failed to object to the court's statements.  See id. at 918; cf. United States v. Schuman, 127 F.3d 815, 817 (9th Cir. 1997) (noting that where the government has objected to the district court's rejection of an appeal waiver provision, the defendant is on notice that he may not have a right to appeal).  The Ninth Circuit further justified its decision on the theory that litigants should be able to trust and rely upon a district court's statements.  See Buchanan, 59 F.3d at 918.  However, in United States v. Atterberry, 144 F.3d 1299, 1301 (10th Cir. 1998), this court rejected Buchanan's reasoning because it was persuaded that "statements made by a judge during sentencing concerning the right to

appeal . . . do not affect a defendant's prior decision to plead guilty and waive appellate rights." Not only are the facts of Atterberry distinguishable from this case but also Atterberry 's reasoning supports my conclusion that, at the very least, the court's statements at the plea hearing likely affected Defendant's decision to plead guilty.

Given that the district court first uttered its statements at the change of plea hearing, *before* the court accepted Defendant's plea, I am persuaded that at least three of the court's statements were likely to have affected Defendant's decision to plead guilty. In fact, because Defendant was informed of his right of appeal on three occasions before he actually entered his plea (and again while the court accepted his plea), he could reasonably believe that he retained the right of appeal. Consequently, I think it *more than likely* that Defendant did not knowingly and intelligently waive the right or that he believed that the court restored the right before accepting his guilty plea. My conclusion is further buttressed by the fact that the Government did not raise a single objection during the entire plea hearing, nor did it object to any of the four separate instances in which the court told Defendant that he had the right to appeal. [2] Because the

---

[2]This court's statement in Atterberry, 144 F.3d at 1301 n.3, concerning the government's failure to object does not apply to this case. While the court here made statements both at the Rule 11 hearing and at sentencing without objection from the Government, the critical distinction between this case and Atterberry is the Government's failure to object at the Rule 11 plea hearing. Atterberry and the cases it relied upon did

Government failed to object, it was reasonable for Defendant to rely on the court's statements and to expect that he could appeal his sentence.

In light of the district court's unequivocal statements at the Rule 11 hearing rejecting Defendant's waiver of his right of appeal and explaining that he retained the right of appeal, Defendant's apparent understanding of the court's warnings and the consequences of his guilty plea, and the Government's failure to object, I would hold that it was reasonable for Defendant to rely on the court's statements, and, therefore, that he may appeal his sentence.

Turning now to the merits of Defendant's appeal, my approach again substantially differs from that taken by the majority as I cannot see why or how it is beneficial to this court's jurisprudence, the district court, the government, or the defendant to refrain from addressing the errors made by the sentencing court in connection with its qualifying Defendant's 1990 Colorado conviction for intimidating a witness as a violent felony. I therefore address Defendant's alleged errors.

In determining that the conviction for intimidating a witness qualified as a

---

not involve statements made by courts at plea hearings but only dealt with statements made at sentencing hearings. See id.; see also United States v. One Male Juvenile, 117 F.3d 1415, 1997 WL 381955, at **2 (4th Cir. 1997), cert. denied, __ U.S. __ , 118 S. Ct. 1191 (1998).

violent felony under 18 U.S.C. § 924(e)(2)(B), [3] the sentencing court relied on the charging documents and the police report contained within the presentence report. Defendant argues that the intimidation conviction does not constitute a violent felony based on the categorical approach set forth in Taylor v. United States, 495 U.S. 575 (1990). He contends that his conviction does not properly count towards enhancement under § 924(e) because the statute under which he was convicted, Colo. Rev. Stat. § 18-8-704, is overbroad and does not necessarily require for conviction the use, attempted use, or threatened use of force or a substantial risk of violence against a person.

I begin by examining the applicability of Taylor. In response to the variety of state law burglary statutes, the Supreme Court in Taylor created a narrow, generic definition of burglary for purposes of a § 924(e) enhancement. See Taylor, 495 U.S. at 599. In determining whether a particular conviction for burglary qualifies under the generic definition, the Court mandated that courts use

---

[3]The statute defines a violent felony as
any crime punishable by imprisonment for a term exceeding one
year . . . that–

     (i) has as an element the use, attempted use, or threatened use of
physical force against the person of another; or
     (ii) is burglary, arson, extortion, involves use of explosives, or
otherwise involves conduct that presents a serious potential risk of physical
injury to another.

Id. § 924(e)(2)(B).

"a formal categorical approach, looking only to [the fact of conviction and] the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." Id. at 600; see United States v. Romero, 122 F.3d 1334, 1341 (10th Cir. 1997), cert. denied, ___ U.S. ___, 118 S. Ct. 1310 (1998). The purpose of this restricted method was "to avoid 'practical difficulties and the potential unfairness of a factual approach' to each prior conviction.'" United States v. King, 979 F.2d 801, 802 (10th Cir. 1992) (quoting Taylor, 495 U.S. at 601). The Court held that if a state statute defines burglary more broadly than the definition set forth in Taylor, "then a conviction obtained under such a statute may not, except in narrowly defined circumstances, be counted toward enhancement." United States v. Barney, 955 F.2d 635, 638 (10th Cir. 1992). However, Taylor carved out an exception which allows courts to look "beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of a generic [§ 924(e)(2)(B)(ii) ] burglary" to convict the defendant. Taylor, 495 U.S. at 602. In these rare cases, Taylor authorizes a sentencing court to examine "the indictment or information and jury instructions" in making the above determination. See id. In burglary cases where jury instructions do not exist because the defendant pled guilty, this court has held that the sentencing court may review the text of the underlying guilty plea "to determine whether the defendant was charged with and admitted conduct which

- 8 -

falls without question within the ambit of Taylor's generic definition." Barney, 955 F.2d at 639.

Because the enhancement statute does not specifically list intimidation of a witness as a violent felony, this court would normally inquire whether intimidation "is a crime that either has an element of use, attempted use or threatened use of physical force against the person of another, or whether that crime involves conduct that presents a serious potential risk of physical injury to another." United States v. Phelps, 17 F.3d 1334, 1342 (10th Cir. 1994). The Colorado statute under which Defendant was convicted in 1990 prohibits intimidation of "a witness or victim . . . by use of a threat, act of harassment, or act of harm or injury to any person or property."[4] Colo. Rev. Stat. § 18-8-704(1).

---

[4]The Colorado statute states that a person commits a class 4 felony

if, by use of a threat, act of harassment, or act of harm or injury to any person or property directed to or committed upon a witness or a victim to any crime, a person he believes has been or is to be called or who would have been called to testify as a witness or a victim, . . . or any person who has reported a crime or who may be called to testify as a witness to or victim of any crime, he intentionally attempts to or does:

(a) Influence the witness or victim to testify falsely or unlawfully withhold any testimony; or

(b) Induce the witness or victim to avoid legal process summoning him to testify; or

(c) Induce the witness or victim to absent himself from an official proceeding to which he has been legally summoned; or

In other words, the statute defines the crime of intimidation so that one may commit it against a person *or* against property. Applying the categorical approach to determine whether Defendant's intimidation conviction constitutes a violent felony, see Phelps, 17 F.3d at 1342 (applying categorical approach to kidnapping conviction); United States v. Permenter, 969 F.2d 911, 913 (10th Cir. 1992) (applying categorical approach to attempted burglary), it is clear that the Colorado statutory definition of intimidating a witness is overly broad–the fact of conviction and the statute do not *necessarily* require either that an element of the crime is "the use, attempted use, or threatened use of physical force against the person of another," see 18 U.S.C. § 924(e)(2)(B)(i), or that the crime "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2(B)(ii); see also King, 979 F.2d 803-04 (reviewing New Mexico statutory definitions to hold that conspiracy conviction does not qualify as violent felony under subsections (i) or (ii)); United States v. Strahl, 958 F.2d 980, 986 (10th Cir. 1992) (holding that Utah attempted burglary convictions did not categorically involve conduct presenting serious potential risk of physical harm to another under subsection (ii)). This means that, under the categorical approach,

---

(d) Inflict such harm or injury prior to such testimony or expected testimony.

Colo. Rev. Stat. § 18-8-704.

Defendant's 1990 conviction for intimidating a witness cannot qualify as a violent felony for enhancement purposes.

In apparent recognition of the fact that Defendant's intimidation conviction does not qualify as a violent felony under the categorical approach, the Government argues that this court may apply the exception outlined by the Supreme Court in Taylor and examine the charging documents and guilty plea to determine if the intimidation conviction qualifies under 18 U.S.C. § 924(e). My review, however, is restricted because this court limited the applicability of the Taylor exception in Permenter. In that case, we held that a court may utilize only the purely categorical approach to determine whether a non-enumerated conviction qualifies as a violent felony under the "otherwise" clause of § 924(e)(2)(B)(ii). See Permenter, 969 F.2d at 914. The court reasoned that reference to supporting information such as a charging document or a jury instruction serves only to determine whether a defendant is actually convicted of "burglary" as defined by Taylor. The court then stated that because "[t]here is no similar definition governing the 'otherwise' clause[] and no means by which to control the inquiry and prevent it from becoming the kind of factual investigation that Taylor sought to avoid" we may not look to the charging document, jury instruction, or guilty plea in making the violent felony determination under subsection (ii). Id.

Thus, Permenter demands that this court follow only the categorical approach in determining whether the intimidation conviction qualifies under § 924(e)(2)(B)(ii). See King, 979 F.2d at 804 (stating that Tenth Circuit cases require court to examine only the elements of the crime to determine whether conviction is violent felony). But see United States v. Cook, 26 F.3d 507, 510 (4th Cir. 1994) (rejecting argument "that Taylor's instruction to examine the charging papers and jury instructions of a prior conviction to determine whether it constitutes a 'violent felony' applies only to cases under § 924(e)(2)(B)(ii) involving prior" burglary convictions); United States v. Bregnard, 951 F.2d 457, 459 (1st Cir. 1991) (stating that Taylor approach is applicable to the entire enhancement statute, not just to crimes enumerated in § 924(e)(2)(B)(ii)). On its face, the definition of the intimidation offense allows a person to be convicted for acts against property, and, therefore, the statute does not *necessarily* present circumstances which involve a serious potential risk of physical injury to a person. Accordingly, the conviction does not qualify under the "otherwise" clause of 18 U.S.C. § 924(e)(2)(B)(ii). See Permenter, 969 F.2d at 914-15; United States v. Sherbondy, 865 F.2d 996, 1011 (9th Cir. 1988) (stating that where a statute "is overly broad or inclusive, subsection (ii) is not applicable"), cf. United States v. Parker, 5 F.3d 1322, 1326 (9th Cir. 1993) (refusing to apply Taylor exception in case involving "otherwise" clause of § 924(e)(2)(B)(ii) and

strongly noting that Taylor permitted a deviation from the categorical approach only in burglary cases).

I am now left with the question of whether, under Permenter, a court may look to the underlying charging document and guilty plea "to determine whether [the defendant] was charged with and admitted conduct which falls without question within the ambit of" § 924(e)(2)(B)(i). Barney, 955 F.2d at 639. Permenter, however, does not explicitly say whether the Taylor exception applies to cases under subsection (i), and no subsequent decision of this court has answered this thorny issue. If Permenter can be read to preclude a court from reviewing the underlying charging documents to determine whether the conviction qualifies under § 924(e)(2)(B)(i), my analysis would end here and the intimidation conviction would not qualify as a violent felony because it is overly broad. Nevertheless, I need not resolve this question because, even if Permenter does not preclude our review, the Colorado intimidation conviction does not satisfy the narrow constraints of the Taylor exception.

Both the charging document and Defendant's written guilty plea use the language of the Colorado statute to describe the crime, i.e., "by use of threat and act of harm or injury to any person or property." Appellee's Addendum at 8; see id. at 12-13. Thus, the crime as described in these underlying documents does not categorically require as an element the use, threatened use, or attempted use of

force against a person.  These documents contemplate that force may have been used, threatened, or attempted against property.  Only by examining the conduct of a separate count in the charging document for the prior conviction can we infer that the use of threat or act of harm or injury was committed against a person. Moreover, because we can only draw an inference or an implication from the charging document and the plea, I cannot say that the use, threatened use, or attempted use of force against a person was necessarily an element of the intimidation conviction.  Therefore, even if I were to apply the Taylor exception and examine the underlying documents in this case, I cannot ascertain whether Defendant "was charged with and admitted conduct which [is] without question" a violent felony under 18 U.S.C. § 924(e)(2)(B)(i). [5] Barney, 955 F.2d at 639.

Additionally, I point out that in determining that the conviction was a violent felony the district court did not merely examine the nature of the offense as set out in the charging document and guilty plea, but it erroneously relied on the presentence report (and the police report contained within it).  See Barney, 955 F.2d at 640 (indicating that a sentencing court is prohibited from relying on a presentence report to determine whether charged and admitted conduct

_____

[5]I am not persuaded by the Seventh Circuit's reasoning in United States v. Lowe, 923 F.2d 528, 531 (7th Cir. 1991), overruled in part on other grounds, United States v. Byerley, 46 F.3d 694, 699 (7th Cir. 1995), because it necessitates that a defendant object to or dispute the facts of the conviction, thus requiring the court to look beyond the charging documents and guilty plea.

categorically constitutes a violent felony). This is exactly the type of case-by-case factual probe that Taylor and Permenter cautioned against. But see Bregnard, 951 F.2d at 460-61 (applying Taylor's exception to determine whether assault and battery conviction qualified under § 924(e)(2)(B)(i)); Cook, 26 F.3d at 510 (applying Taylor's exception to obstruction of justice conviction and citing similar applications by First, Seventh, and Ninth Circuits).

In sum, whether this court would be precluded from examining the charging document and guilty plea to determine if the intimidation conviction qualifies under subsection (i) or whether we would look to those documents and conclude that they fail to show without doubt that an element of the crime was the use, attempted use or threatened use of physical force against the person of another under subsection (i), the result is the same–Defendant's conviction for intimidation of a witness under Colo. Rev. Stat. § 18-8-704 does not constitute a violent felony pursuant to 18 U.S.C. § 924(e)(2)(B)(i). Because I would hold that his intimidation conviction also does not qualify under § 924(e)(2)(B)(ii), I also would hold that the district court found only two convictions that count toward the enhancement. As a result, I would remand for the court to consider whether any of the other remaining three convictions presented by the Government qualify as a violent felony. This result gives Defendant an opportunity to raise objections at resentencing to the use of either the escape or the two attempted burglary

convictions for purposes of the enhancement.

For these reasons, I respectfully dissent.