129 P.3d 1241

**STATE of Idaho, Plaintiff–Respondent.**

v.

**John M. COPE, Defendant–Appellant.**

**No. 32175.**

Supreme Court of Idaho,
Boise, December 2005 Term.

Feb. 2, 2006.

Molly J. Huskey, State Appellate Public Defender, Boise, for Appellant. Eric D. Fredericksen argued.

Honorable Lawrence G. Wasden, Attorney General, Boise, for Respondent. Jessica M. Lorello argued.

SCHROEDER, Chief Justice.

John Cope (Cope) murdered Brian Elliot (Elliot) by decapitating him with a knife. Following this act, Cope mutilated Elliot's severed head. The State charged Cope with first degree murder and sought a sentencing enhancement for use of a deadly weapon. Following a Rule 11 plea agreement, Cope pled guilty to second degree murder; the State withdrew its intent to seek a sentencing enhancement; and, the district court imposed a fixed life sentence. Cope moved to reduce the sentence. The district court denied the motion. Cope appealed. The Idaho Court of Appeals affirmed the district court's decision. Cope filed a Petition for Review, which this Court granted. Cope argues: (1) the use of the competency evaluation and psychologist's testimony at his sentencing hearing violated his constitutional and statutory rights under I.C. § 18–215 and I.C. § 19–3003, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article 1, § 13 and Article 1, § 17 of the Idaho Constitution; and (2) his fixed life sentence is excessive. The state maintains that Cope waived his right to appeal in this Rule 11 plea agreement, and his fixed life sentence is not excessive.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 29, 2002, Cope was watching TV in his apartment located above Palucci's Men's store in Lewiston, Idaho. According to his statement in the presentence report, he "must have taken some benadryl or drank some beer or something" when Elliot knocked on the door to remind him he had three days to move out of his apartment. When Elliot came back "five seconds later" and knocked again, Cope said "melcirdak" told him to:

finish [Elliot] off. I hurd [sic] god say finish him off he's the mark of the beast. Get your knife and answer the door. And there was a man who I thought was the mark of the beast a black man mutated white and that's when I slit both sides of his neck and ran him down cut off his head and tossed it and [mutilated] it so he could not speak or hear. I had been taking a lot of benadryl and hearing voices.

Cope murdered Elliot by slitting both sides of his neck with a knife and decapitating him. He then mutilated Elliot's severed head. In the process Cope cut his own hand. He went to an emergency room where he was "covered in blood," acting "psychotic," and talking about "letting the beast out." Cope told an officer that he was "being tormented by the mark of the beast," and when the "mark of the beast" came to his door, he cut the beast's head off with a knife.

The State charged Cope with first-degree murder and filed a motion for a psychological evaluation pursuant to I.C. §§ 18–210 and 18–211. The State amended its charge to include a notice of intent to seek a sentence enhancement for use of a deadly weapon pursuant to I.C. § 19–2520.

The magistrate judge ordered a psychological evaluation pursuant to I.C. § 18–211 to determine whether Cope was competent to assist in his own defense and stand trial. Cope refused to participate in this initial evaluation with the appointed state psychologist (Dr. Phillips). Pursuant to I.C. § 18–211(3), the magistrate judge ordered Cope

confined to the Idaho Security Medical Facility for evaluation. A second psychologist, Dr. Sombke, was appointed. Based upon Dr. Sombke's initial evaluation, Cope was found unfit to proceed. However, four months following this initial evaluation, the magistrate judge determined Cope was competent to stand trial and bound him over to the district court.

Pursuant to a Rule 11 plea agreement, the State withdrew its request for a sentence enhancement, and Cope pled guilty to a lesser charge of second-degree murder. As a part of the agreement Cope waived his right to appeal. The district judge accepted the plea and ordered a presentence investigation report. The State filed a motion asking that the presentence investigator be allowed to review the psychologist's evaluation of Cope. Cope objected, claiming that I.C. § 18–215 prohibited the use of such report in any proceeding other than a determination of competence. The district court granted the State's motion.

At the sentencing hearing, Dr. Sombke testified regarding statements Cope made during his commitment at ISMF and his competency evaluation. The district court sentenced Cope to a fixed life term. Cope filed a motion for a reduction of sentence, which the district court denied. Cope appealed. The Court of Appeals affirmed the district court's conviction and sentence and held that Cope's waiver of his right to appeal was valid. Cope filed a Petition for Review, which this Court granted.

## II.

### STANDARD OF REVIEW

■ When considering a case on review from the Court of Appeals, this Court does not merely review the correctness of the decision of the Court of Appeals. This Court acts as though it is hearing the matter on direct appeal from the decision of the trial court. However, this Court does give serious consideration to the decision of the Court of Appeals. When this Court grants a petition to review a Court of Appeals decision, it will ordinarily hear all the issues presented to the Court of Appeals.

*Garza v. State,* 139 Idaho 533, 535, 82 P.3d 445, 447 (2003) (internal citations omitted).

■ A plea agreement is contractual in nature, must be measured by contract law standards, and as a question of law, this Court exercises free review. *Dunlap v. State,* 141 Idaho 50, 63, 106 P.3d 376, 389 (2004).

■ The primary goal in sentencing is the protection of society. *State v. Moore,* 78 Idaho 359, 304 P.2d 1101 (1956). For the purpose of review this Court considers the fixed term of confinement as the sentence imposed. *State v. Strand,* 137 Idaho 457, 460, 50 P.3d 472, 475 (2002).

## III.

### COPE KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY, WAIVED HIS RIGHT TO APPEAL AND THE DISTRICT COURT WAS NOT REQUIRED TO EXPRESSLY WARN COPE OF THE WAIVER FOR IT TO BE VALID.

■ Idaho Criminal Rule 11(d)(1) states that in a plea agreement, "The prosecuting attorney and the attorney for the defendant ... may engage in discussions with a view toward reaching an agreement, which may include a waiver of the defendant's right to appeal the judgment and sentence of the court...." Idaho Criminal Rule 11(c) provides the following:

(c) Acceptance of plea of guilty. Before a plea of guilty is accepted, the record of the entire proceedings, including reasonable inferences drawn therefrom, must show:

1) The voluntariness of the plea.

2) The defendant was informed of the consequences of the plea, including minimum and maximum punishments, and other direct consequences which may apply.

3) The defendant was advised that by pleading guilty the defendant would waive the right against compulsory self-incrimination, the right to trial by

jury, and the right to confront witnesses against the defendant.

4) The defendant was informed of the nature of the charge against the defendant.

5) Whether any promises have been made to the defendant, or whether the plea is a result of any plea bargaining agreement, and if so, the nature of the agreement and that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

In *State v. Murphy*, 125 Idaho 456–57, 872 P.2d 719–20 (1994), this Court stated that:

The law has long since recognized that a criminal defendant by pleading guilty waives certain constitutional rights including, the privilege against self-incrimination ... *Waiver of these constitutional rights will be upheld if the entire record shows the waiver was made voluntarily, knowingly, and intelligently.*

...

The right to appeal is purely a statutory right and is not a right guaranteed by any provision of the federal or state constitutions. Given the fact that constitutional rights may be waived, there is no doubt that a statutory right may be waived as well.

...

Since the waiver of the right to appeal in this case was entered as a part of the plea agreement, we employ the same analysis as we would in determining the validity of any plea of guilty.

(Emphasis added). Additionally, the United States Supreme Court has stated:

When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea ...

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973).

Federal case law *prior to the 1999 amendment to F.R.C.P. 11(b)(1)(N)* which explicitly requires *federal courts to openly warn defendants of their right to* appeal supports the conclusion that unless stated, there is no prerequisite requiring a court to openly warn a defendant about his decision to waive his right to appeal. *See United States v. DeSantiago–Martinez,* 38 F.3d 394, 395 (9th Cir. 1992) ("In our view, a Rule 11 colloquy on the waiver of the right to appeal is not a prerequisite to a finding that the waiver is valid; rather, a finding that the waiver is knowing and voluntary is sufficient."); *United States v. Black,* 201 F.3d 1296, 1301–02 (10th Cir. 2000); *United States v. Michelsen,* 141 F.3d 867, 871–72 (8th Cir.1998); *United States v. Wenger,* 58 F.3d 280, 282 (7th Cir.1995); *United States v. Portillo,* 18 F.3d 290, 292–293 (5th Cir.1994); *United States v. Davis,* 954 F.2d 182, 186 (4th Cir.1992). This Court notes that the amendment to F.R.C.P. 11(b)(1)(N) expresses a wise policy that is prudent to follow to assure that a defendant fully understands the effect of the agreement and closes the door on the type of dispute presented in this case.

█ Cope signed his Rule 11 plea agreement on January 31, 2003, in open court, and at no time during that hearing did he attempt to withdraw his Rule 11 agreement or contest any part of the agreement. The plea agreement made the following statement:

Unless the plea is rejected or withdrawn, the Defendant hereby gives up any and all motions, defenses, objections, appeals, or requests that defendant has made or raised or could have served hereafter to or against any matters preceding the Court's entry of judgment and imposition of sentence.

The district court examined Cope to assure that he voluntarily, knowingly, and intelligently entered into his Rule 11 plea agreement:

THE COURT: Alright. Then, at this time, Mr. Chapman, do you need time then to review the Rule 11 agreement?

MR. CHAPMAN [Cope's counsel]: Your Honor, I have been through the Rule 11 agreement in some detail with Mr. Cope and I believe that he is prepared to sign

that at this time. And I just wanted him to do it in open court.

THE COURT: Alright. Thank you. And, Mr. Cope, have you had an opportunity to read through that Rule 11 agreement?

THE DEFENDANT: Yes, sir. Yes, I have, Your Honor.

THE COURT: And have you had a sufficient opportunity to talk to Mr. Chapman and Mr. Van Idour about that Rule 11 agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you want to take any more time at all right now and speak to them further before you enter your signature on the agreement?

THE DEFENDANT: No, Your Honor.

THE COURT: Okay. Then if you choose to, you can go ahead and enter your signature on the agreement at this time.

THE DEFENDANT: (As so doing.)

The district court revisited whether Cope was voluntarily, knowingly, and intelligently entering into his Rule 11 plea agreement, stating: "Mr. Cope, I am now going to ask you some questions. The questions are all very straightforward. Again, I just want to ask them so that I can determine whether or not you're entering your plea of guilty this morning knowingly, voluntarily and intelligently." After a fairly lengthy dialogue with Cope in which the court again reminded Cope of the charge against him, as well as the maximum penalty, the court asked Cope:

THE COURT: And how did you plead to that charge?

THE DEFENDANT: I pled guilty.

THE COURT: Has anyone promised you that I would be easy on you if you plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone promised you anything about what I would do if you plead guilty?

THE DEFENDANT: No, Your Honor.

The record supports the conclusion that Cope entered into his plea agreement voluntarily, knowingly, and intelligently.

## IV.

## THE DISTRICT COURT'S ORAL REFERENCE TO COPE'S RIGHT TO APPEAL MADE AT THE SENTENCING HEARING DID NOT NULLIFY COPE'S RULE 11 PLEA AGREEMENT WHICH SPECIFICALLY WAIVED THAT RIGHT.

At the January 31, 2003, change of plea hearing the district judge made the following statement:

If you plead guilty and if your guilty plea is found to be knowing and voluntary and intelligently made and is accepted by the Court, then by pleading guilty you give up your right ... your privilege against self-incrimination. That is, if you plead guilty and I accept your plea of guilty, I can ask you questions about the charge against you and you would have to answer those questions. You may no longer claim the right of self incrimination with regard to these charges as you have already pleaded guilty and incriminated yourself.

By pleading guilty and my accepting your plea of guilty, you also waive or give up any defenses that you may have to the charge against you in the information.

You have a right to appeal any final and *appealable* decision that I make. If you decide to appeal, let your attorney know right away. An appeal is a technical legal process and you can lose your right to appeal if you don't appeal in the right way and on time. The present time period for appeal is 42 days from any *appealable* or final order.

(Emphasis added). At the April 21, 2003, sentencing hearing the district judge stated the following:

THE COURT: And, Mr. Cope, I want to make sure you understand that you have a right to appeal the Court's *sentence* if you choose to. You have to do it within the proper times frames. And if you choose to appeal the Court's decision, you need to speak with Mr. Van Idour and Mr. Chapman right away. Do you understand that?

THE DEFENDANT: All right, Your Honor.

(Emphasis added).

■ Cope argues that the district judge's statements override any provision in the plea agreement waiving the right to appeal. Two points surround the court's statements—the meaning of the district judge's statements, and the case law concerning the issue of whether an oral statement made by the court regarding a defendant's appeal rights can "trump" a plea agreement waiving such rights. First, the court's comments regarding an appeal were made after, not before, and not contemporaneously with, Cope's knowing, voluntary, and intelligent acceptance of his Rule 11 agreement in which he waived his right to appeal any matters "preceding the court's entry of judgment and imposition of sentence." The court's comments when read either separately or together, reference what is "appealable." The plea agreement did not preclude appeal of the sentence. There is no conflict between the district judge's statement and the plea agreement.

The Court of Appeals made this statement if the district judge's statements were deemed to be in conflict with the plea agreement:

> The court's later comment could not retrospectively affect Cope's understanding of an agreement to which he had already assented. We note that nearly all federal circuit courts that have addressed this issue have held that a trial court's act of incorrectly informing a defendant of the right to appeal, in conflict with a waiver of appellate review in the plea agreement, has no effect on the validity of the waiver. *See United States v. Fleming,* 239 F.3d 761, 765 (6th Cir.2001); *United States v. Fisher,* 232 F.3d 301, 303–04 (2nd Cir. 2000); *United States v. Atterberry,* 144 F.3d 1299, 1301 (10th Cir.1998); *Michelsen,* 141 F.3d at 872–73; *United States v. Ogden,* 102 F.3d 887, 888–89 (7th Cir.1996); *United States v. Melancon,* 972 F.2d 566, 568 (5th Cir.1992). *The Ninth Circuit Court of Appeals stands alone in holding that a court's oral reference to the right to appeal will trump a defendant's waiver of*

*that right in a plea agreement. See United States v. Buchanan, 59 F.3d 914, 917–18 (9th Cir.1995).*

Lest there be confusion in this area, two things are noteworthy: (1) *Buchanan* is factually distinguishable from the instant case; (2) following *Buchanan,* the Ninth Circuit clarified its position regarding a court's oral reference in *United States v. Floyd,* 108 F.3d 202 (9th Cir.1997) and most recently, *United States v. Lopez–Armenta,* 400 F.3d 1173 (9th Cir.2005).

After Buchanan waived his right to appeal his *sentence* in a plea agreement, there was a great deal of confusion surrounding his right to appeal the impending sentence, which occurred concurrently, with a discussion as to whether he should be allowed to withdraw his guilty plea due to an ineffective assistance of counsel. In this confusion the district judge stated that Buchanan had a right to appeal. The Ninth Circuit narrowly held that: "Given the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, we hold that *in these circumstances,* the district court's oral pronouncement controls and the plea agreement waiver is not enforceable." *Buchanan* at 918 (emphasis added). Clearly, the circumstances in *Buchanan* are different than the circumstances in this case in which the district judge told Cope that he had a right to appeal any *"appealable decision"*—that decision being Cope's sentence.

Following *Buchanan,* the Ninth Circuit clarified its position in *United States v. Floyd,* 108 F.3d 202 (9th Cir.1997), and most recently, *United States v. Lopez–Armenta,* 400 F.3d 1173 (9th Cir.2005). In *Lopez,* the defendant entered an unconditional plea of guilty waiving his right to pretrial constitutional defects. Later at the sentencing hearing, when the district court informed Lopez that he had a right to appeal, Lopez tried to use *Buchanan* to argue that the court's on-the-record statement informing him that he had a right to appeal trumped his guilty plea waiving that same right. The Ninth Circuit did not accept Lopez's argument, and explained exactly how *Buchanan* is to be used:

*Buchanan* addresses the situation in which confusion regarding appellate rights arises contemporaneously with the waiver, while *Floyd* applies where the defendant attempts to have later confusion "relate back" to his waiver. Accordingly, we hold that Lopez knowingly and voluntarily waived his right to appeal the suppression ruling, and his waiver was not affected by the district court's ambiguous statement three months later at the sentencing hearing.

*Id.* at 1177. The record evidences no confusion arising at the time Cope signed his Rule 11 agreement on January 31, 2003, and the record evidences no confusion approximately three months later at the time of Cope's sentencing on April 21, 2003. Even weighing Cope's claim of confusion, he has more in common with the defendants in *Floyd* and *Lopez* than the defendant in *Buchanan*. His attempt to create and make a later claim of confusion relate back to his waiver fails.

## V.

## THE USE OF DR. SOMBKE'S COMPETENCY EVALUATION AND TESTIMONY DOES NOT INVALIDATE THE SENTENCE

Cope waived his right to appeal "any matters preceding the Court's entry of judgment and imposition of sentence." Dr. Sombke's testimony and findings, as well as the use of his report in the presentence report, occurred prior to sentencing. Consequently, the State maintains that he is foreclosed from appealing the use of the doctor's report and testimony.

Idaho Code § 18–215 provides the following:

A statement made by a person subjected to psychiatric or psychological examination or treatment pursuant to sections 18–211, 18–212 or 19–2522, Idaho Code, for the purposes of such examination or treatment shall not be admissible in evidence in any criminal proceeding against him on any issue other than the defendant's ability to assist counsel at trial or to form any specific intent which is an element of the crime charged, except that such statements of a defendant to a psychiatrist or psychologist as are relevant for impeachment purposes may be received subject to the usual rules of evidence governing matters of impeachment.

■■■ Cope's statements to the psychiatrist for purposes of the competency evaluation should not have been used. They did not fall under the limited exception allowing use for impeachment. The State's view that the waiver of appeal rights on matters preceding entry of judgment and sentencing overrides the statutory restraint upon use of statements from the examination is flawed. Ultimately the determination of whether a particular sentence is an abuse of discretion depends upon the information that is used in framing the sentence. If a defendant who retains the right to challenge the sentence is precluded from challenging the use of information that is statutorily excluded or false or otherwise improper, the right to appeal could be rendered meaningless. In many instances the only function of the appeal would be to check to see if the sentence imposed fell within the maximum allowed by statute, regardless of whether the underlying information leading to that sentence was inaccurate or improper. Retention of the right to appeal a sentence is not so limited. It extends to underlying information that forms the basis of the sentence. This leads to the question of whether the State breached the plea agreement which would allow the plea to be withdrawn.

A defendant is constitutionally entitled to relief when the State breaches a promise made to him in return for a plea of guilty. When the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise and hence, his conviction cannot stand. .... [Moreover, a] defendant is also bound by a plea agreement. "If the condition upon which the prosecution's promised sentencing recommendation was based fails, the prosecution is not obligated to perform the agreement."

*State v. Jafek*, 141 Idaho 71, 74, 106 P.3d 397, 400 (2005) (internal citations omitted).

■■■ Nothing in Cope's plea agreement promised that the State would not use Dr.

Sombke's competency evaluation and testimony at sentencing. The prosecution did not breach any promise in its plea agreement. In this regard the evaluation is the same as any other contested information upon which the sentencing court must rule. Also, no promises were made as to how the court would rule on any findings or admission of any evidence for purposes of sentencing:

THE COURT: And how did you plead to that charge?

THE DEFENDANT: I pled guilty.

THE COURT: Has anyone promised you that I would be easy on you if you plead guilty?

THE DEFENDANT: No, Your Honor.

THE COURT: Has anyone promised you anything about what I would do if you plead guilty?

THE DEFENDANT: No, Your Honor.

The use of the information obtained in the competency evaluation was not addressed in the agreement. The fact that the information was included in the presentence report and in Dr. Sombke's testimony does not invalidate the plea, but Cope is free to argue that improper information infected the sentence. A review of the record indicates that it did not.

Idaho Code § 18–4004 states: "Every person guilty of murder of the second degree is punishable by imprisonment not less than ten (10) years and the imprisonment may extend to life." In *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005), this Court stated:

Sentencing is a matter for the trial court's discretion. This Court's standard of review of a sentence is well established. So long as the sentence is within the statutory limits, the appellant must show that the trial court, when imposing the sentence, clearly abused its discretion. Where reasonable minds could differ whether a sentence is excessive, this Court will not disturb the decision of the sentencing court. This Court will set aside the sentence only where reasonable minds could not differ as to the excessiveness of the sentence. To determine whether the trial court abused its discretion, this Court reviews "all the facts and circumstances of the case." To prevail, the appellant must establish that, under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment. Those objectives are "(1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing."

*Id.* (internal citations omitted).

 The district court weighed the sentencing factors of retribution, deterrence, rehabilitation, and the protection of society. In a lengthy explanation for its imposition of a fixed life sentence, the Court discussed all four of these sentencing factors, but clearly focused on the primary need to protect society. The information used in the district judge's analysis was available to him from sources outside Dr. Sombke's report or testimony:

. . . [T]he state has asked for the maximum sentence. And that criteria really is whether or not I ultimately determine whether you would be safe in our community, safe as one of our neighbors, safe to others and not risk the kind of harm that you've caused in this case.

. . . .

Mr. Cope, I want to then talk to you a little bit about the mental health issue because, obviously, everyone has asked me to consider that. That's has [sic] been the focus of testimony of the two experts called before the Court to testify this morning. And their testimony has been relatively consistent. And they have indicated that you have a serious mental health problem, a mental health problem, it doesn't appear, [that] has ever been successfully treated in a manner in which you can manage yourself in society and not cause some kinds of problems. That has escalated to the point to where you are before this Court for this very serious offense.

I want to share with you something, Mr. Cope, that is in the materials that you provided with the Court, and it is on the second time you were committed involuntarily here in Idaho. And this comes with

a background of commitments in the state of California. It's my understanding that you have been committed on a number of occasions in the state of California.

You were involuntarily committed for mental health problems in the state of Idaho on three occasions prior to this offense. And those hospitalizations were from June the 7th of 2001 until August the 2nd of 2001, from October the 25th of 2001 to January 15th of 2002, from March 1st of 2002 to March 20th of 2002, the most recent involuntary commitment prior to this offense.

But I want to read to you an observation that's in the—in your records upon your second hospitalization in the state of Idaho. And it reads as follows, and these are numbered by the physician who wrote this.

Number 1, shortly after discharge, the patient became noncompliant with his outpatient mental health treatment, suffering a decompensation of his illness. Two, he has a history of aggression and violence when noncompliant with treatment and medications. Three, he is homeless and lacking any support system. Four, his alcohol abuse is chronic, those four factors. And I think those are very important factors and factors I look at very closely, because I think those factors are consistent each time you have been involuntarily committed.

And when I say involuntarily committed, that is—that means you were committed by Court order based on a finding that you were gravely disabled and likely to endanger yourself or others.

I am concerned, I have to be concerned about the fact that there does not seem to be any kind of outpatient setting that can handle your state of mental illness. If you are involuntarily committed, you are in custody, obviously, during those commitments, you tend to clear somewhat. You are released; and then as this number one I read to you states, shortly after discharge, you become noncompliant with your outpatient mental health treatment, suffering a decompensation of your illness.

As the experts testified, that is a pattern. And they look, as I look, at the historical pattern to predict what the future might hold if you were in a similar setting.

I'm also concerned about your history of aggression and violence when you're noncompliant with treatment and medications. And the reason is because the pattern is you become noncompliant; and then when you become noncompliant, you are aggressive and violent, which, obviously, creates a great risk to others, and in this particular case, created the greatest risk of all.

Three, I don't find, or it doesn't appear to me, that your circumstances are going to change relative to this factor, that you are homeless and lacking any support system. You're a 43–year–old man, and that has been your situation for quite some time.

And then, finally, chronic alcohol abuse is a contributing factor for your decompensation, which seems to always occur upon your release from the mental health setting. And I don't think that's ever going to go away. And from your statement to the Court, it just does not appear that that's something that you are ever going to successfully manage on your own.

. . . .

[P]rotection of society. This is the most important goal. And, Mr. Cope, I have to tell you, I view you as a very dangerous individual. And the reason I do is because of the four factors that I talked to you about that are contained in the mental health evaluations.

Because of those four factors, you are dangerous to others. I think there is a high likelihood that you will commit another crime if you are released. And everyone has indicated those criminal offenses have been escalating in nature. And some of them maybe can be characterized as kind of nuisance-type offenses; but, obviously, you are capable of much more than nuisance-type offenses. Your conduct caused and threatened serious harm, and there was no justification, absolutely none, for what you did.

. . . .

502

In this particular case, your mental illness has been described as incurable. It can be treated such that you can be functional, it appears, in a custodial setting. But the pattern has been, anything less than that, and you have not been able to successfully function in society, and you have not been safe for others of us who live in society.

. . . .

I frankly can't conceive of feeling comfortable ever with you residing in the neighborhoods of any of our communities. And if I can't do that, if I can't conclude that in probability you could be rehabilitated and could function in society if there is a chance for that. But frankly, with the evidence before the Court, your history of mental health treatment and your history of mental illness, your prior criminal conduct and this particular offense, I can't conclude probably [sic] that you would ever become positioned to be safe in society.

We have talked about whether or not you might be able to circulate in the general population in a prison setting, and that, frankly, is for prison officials and treatment providers to make that determination. And I think that they obviously are going to consider that based on the testimony that I have heard this morning.

Cope's fixed life sentence is within the statutory limits set forth in I.C. § 18–4004 for second-degree murder. Cope has not shown that his sentence was excessive in light of the sentencing goals of criminal punishment, most notably the goal to protect society. Rather, Cope's main argument is that if he receives less than a fixed life sentence, he can control his mental illness, have "the opportunity to rehabilitate himself," and be "adequately punish[ed]." Yet, as the Court of Appeals noted in reviewing the record, *"Cope's own mental health expert* [(Dr. Reznicek)] testified that even with continuous medication, Cope would remain a danger to the public." (Emphasis added.) Specifically, at the sentencing hearing, Dr. Reznicek stated:

[Mr. Van Idour] Q: Doctor, if Mr. Cope were treated with these psychotropic medications and kept on these medications, do you believe that he would pose any danger to the public at large?

[Dr. Reznicek] Q: Yes. Yes, I do.

With a history of noncompliance to remain medicated, and with his own expert testifying that Cope, even if medicated, still poses a threat to others, Cope has failed to show how anything less than a fixed life sentence could meet the sentencing objective to protect society. The list of charges and convictions, contained in the presentence report from 1979 to the murder of Elliot in 2002, in both California and Idaho, does not lead to a conclusion that Cope might rehabilitate himself. This was a gruesome and horrifying crime that warrants the sentence imposed by the district court when all the appropriate information and factors are considered. It would be difficult to rationalize any other sentence.

## VI.

### CONCLUSION

The judgment and sentence of the district court is affirmed.

Justices TROUT, EISMANN, BURDICK and JONES concur.