**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38589**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2013 Opinion No. 9** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: February 12, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **BENNETT JACOB BARTLETT,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Orders relinquishing jurisdiction and denying I.C.R. 35 motion, <u>affirmed</u>.

Silvey Law Office, Ltd., Star, for appellant. Greg S. Silvey argued.

Hon. Lawrence G. Wasden, Attorney General; Jason M. Gray, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GRATTON, Judge

Bennett Jacob Bartlett pled guilty to aggravated assault. The district court followed the plea agreement and sentenced Bartlett to a unified five-year term, with two years determinate, and retained jurisdiction. Bartlett appeals from the district court's order relinquishing jurisdiction. He also appeals from the district court's order denying his Rule 35 motion. Bartlett argues that the district court promised him probation if he successfully completed the retained jurisdiction program and thus erroneously relinquished jurisdiction and denied his Rule 35 motion.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In March 2010, Bartlett physically assaulted a woman he was living with while he was under the influence of alcohol. The incident began when Bartlett picked up the woman's dog and twice hit it in the face. According to the presentence investigation report (PSI), Bartlett pushed the woman down when she tried to stop him from striking the dog. Bartlett then held his

1

hand over the woman's mouth so that she could not breathe and "threatened to put a sock and plastic bag in her mouth to prevent her from making any noise." Bartlett also hit the woman multiple times in the face. The woman was not allowed to leave her residence and was threatened that if she called the police, Bartlett would "get [her] later." Bartlett finally left the woman's residence and was arrested later that evening.

The State charged Bartlett with second degree kidnapping and cruelty to animals. Bartlett entered into an Idaho Criminal Rule 11 plea agreement. The agreement stipulated that an amended information would be filed and Bartlett would plead guilty to aggravated assault. It also stipulated that Bartlett would be sentenced to a unified five-year term, with two years determinate, and placed on probation. The presiding judge rejected the plea agreement and Bartlett withdrew his guilty plea. The matter was set for trial.

On the morning of trial, the parties entered into another plea agreement whereby Bartlett would plead guilty to aggravated assault and the State would recommend that the district court retain jurisdiction. An alternate judge presided over this plea hearing and accepted Bartlett's guilty plea. During the plea hearing, the alternate judge engaged Bartlett:

| | |
|---|---|
| COURT: | Okay. Now, sir, the discussion between counsel and--you know, I want to be fair with you. I read your presentence report. And it appears to the court that you definitely need substance abuse treatment and anger management counseling so you can be a good member of this society and not get in any trouble. |
| | And I told your attorney that if you did enter a plea of guilty to the felony, aggravated assault, I would have no problem imposing the sentence they recommend and retaining jurisdiction for up to 180 days. |
| | And that would mean that you would, more than likely, go up to Cottonwood, Idaho. It would be up to the department of correction where you'd go. But you'd go up to the department of correction, and I would recommend you be placed in the substance abuse program. *And if you complete that program successfully, they would then file a recommendation to the court that you be brought back and placed on probation.* And then you could get on with your life. |
| | And then at the end of the--if you complete your probation successfully, the--and didn't have any problems on probation, your attorney can file a motion to reduce this charge to a misdemeanor. So you wouldn't be a convicted felon. |

2

| | |
|---|---|
| BARTLETT: | And that is at the end of the five years? |
| COURT: | Yeah. That would be at the end of your probation. |
| BARTLETT: | Which would be five years? |
| . . . . | |
| BARTLETT: | And then it wouldn't go on my record as a felony then? |
| COURT: | No, it would be on your record. Because in Idaho we don't have a way to expunge and erase everything. But it would show you pled guilty to aggravated assault, you went on a retained jurisdiction. *And if you complete that successfully, then it would show you were placed on probation.* And if you complete that successfully, then it would show that the charge is reduced to a misdemeanor, like assault, see? So when you are filling out forms later on down the road after this happened, "have you ever been convicted of a felony?" you could say no, after it's been reduced to a misdemeanor. |
| BARTLETT: | Uh-huh. |

(Emphasis added.)

Bartlett was sentenced, with the consent of counsel, by the alternate judge on the same day to a unified five-year term, with two years determinate. During sentencing, the alternate judge again engaged Bartlett:

| | |
|---|---|
| COURT: | Mr. Bartlett, do you have anything else you'd like to say? |
| BARTLETT: | No. I didn't understand the additional things that are going to be imposed on or asked for after the--when I get back from the rider. *I thought it would be just probation right then.* |
| COURT: | Well, I guess if the prosecutor wants to make some recommendations to the judge, it doesn't necessarily mean that she'll follow it, you know. |
| PROSECUTOR: | Judge, I can inform the court and the defense that those-- some of those terms--*if he earns probation*, some of those terms may be no contact order, may be public defender reimbursement, may be other statutorily permitted sentencing terms at that point, but I just want to wait and see what happens at the rider review. |

(Emphasis added.) Bartlett then asked the alternate judge about his sentence, to which the alternate judge replied:

| | |
|---|---|
| COURT: | Okay. So under Idaho law, after you served the two-year fixed sentence, you'd be eligible for parole. And it would be up to the parole commission when you could be |

|  |  |
|---|---|
| | released. But in no event could they hold you any longer than the total of five years, see? You understand that? |
| BARTLETT: | That's if I foul up on the-- |
| COURT: | Right. |
| BARTLETT: | *But if I complete the program and everything goes good, I will be on probation?* |
| COURT: | *Right.* |
| BARTLETT: | Yeah, I understand that. |
| COURT: | Now, I told you before how to conduct yourself while you're up there. And the State of Idaho, you know, the taxpayers spend a lot of money having these places to try to rehabilitate people rather than just incarcerating them and forget them until they get out.<br><br>So you've got an opportunity here, you know, Mr. Bartlett, to take advantage of the treatment programs and come out of there with a different attitude. Don't throw your life away. |

(Emphasis added.)

Upon the completion of the retained jurisdiction program, the correction officials filed an addendum to the presentence investigation report (APSI). The APSI recommended that Bartlett be placed on probation. The recommendation was based, in part, on Bartlett not receiving any disciplinary sanctions and taking personal and emotional risks with his peers. The APSI also included some concerns regarding Bartlett's conduct during his retained jurisdiction. The APSI noted that Bartlett was making progress, but because of his many years of alcohol abuse he had a "hard time with recall and can become easily confused and overall confusing the class as a whole. He has stated that he has 'wet brain' or organic brain syndrome and seems to frequently use that label as a victim statement." Lastly, the APSI detailed that "Mr. Bartlett has had trouble in his Community Group, mainly due to his unwillingness or unknowing to fully share or justify and/or victimize himself."

The originally assigned judge presided over the review hearing, declined to follow the recommendation for probation, and relinquished jurisdiction. In relinquishing jurisdiction, the district court first found that Bartlett was not a suitable candidate for probation. During the hearing, Bartlett stated that he did not cause trouble for people and his crime was "just a domestic thing." In response, the district court stated:

Number one, I've read the police report. I also read the medical report the same day that you were picked up after you ran from the scene. There's no

4

indication that you were bitten by a dog. Nothing in either report. I have it right in front of me. They have the physical examination. There's no indication.

. . . .

Just--this particular incident was not like you described it. In this case you physically assaulted [the victim]. You were under the influence of alcohol. You picked up her dog by the neck, punched it twice. When she attempted to intervene, you began shoving her and held your hand over her mouth until she could not breathe.

At that point you reportedly threatened to put your fist down her throat, threatened to put a sock and a plastic bag in her mouth to prevent her from making any noise. She relayed that you had pulled her by the hair down the hallway and hit her multiple times in the face. You stated that--she stated that you would not allow her to leave the apartment for nearly two hours. She indicated that you forced her to lay down on the couch and said when she attempted to get up, you hit her in the--with the blade of your hand.

At one point she said that you needed to use the restroom, but were afraid to leave her alone so you urinated in a glass and an empty beer can which, by the way, the officers found at the scene. So there was some corroboration for her statements.

Eventually she relayed that she convinced you to leave her home and promised not to call the police. You threatened that if she called the "pigs," you would get her later. And they located you at the intersection of 35th and State.

Now, you've indicated that, you know, this was just a one time--just a little domestic thing.

In 1984 you were charged with a simple assault in Spokane, Washington, which ultimately was dismissed. In '85 you were charged with harassment and malicious mischief, again, dismissed. In '86 you were charged with assault, two counts of assault--excuse me, one count of assault, one count of assault with a weapon, simple assault, domestic violence. And that was charged--that was your first felony. You violated your probation.

In 1987 you were charged with burglary with a weapon as a felony. That was dismissed. In 1988 you were charged with criminal trespassing as a misdemeanor. You were found guilty.

In 1993, assault, fourth degree, domestic violence as a misdemeanor. Driving--your first DUI was in 1994.

You were charged in '97 with harassment. That was dismissed. In '98 you were charged with malicious mischief, domestic violence and driving under the influence a second time. As a felony, those were dismissed.

In '98 you were found guilty of assault, endangering in violation of a no-contact order and domestic violence. That was your second felony conviction. You spent one year in jail, 323 days suspended.

The year 2000, harassment, domestic violence as a misdemeanor. In the year 2001 you were charged with your third DUI charge and that was your second DUI conviction as a misdemeanor.

5

In 2005, open container as a misdemeanor. And then we have this, which originally was a kidnapping case that was amended to aggravated assault and cruelty to animals was dismissed.

This is a very--and I remember at the time because the original agreement was for probation and I told the parties at the time there was no way, no way that I could follow this agreement and we were going to go to trial.

Ultimately a Plan B Judge came in or a senior judge came in and he was able to work out a resolution which included a recommendation of a retained jurisdiction.

Now, the CAPP recommendation--the CAPP case does not give me any kind of solace, and I'll tell you why. Because all the way through this, what they say is you appear confused and have difficulty really understanding what it is that you did. They also indicate they do not have the facilities to treat any mental health issues.

I'm not comfortable placing you on probation. In my opinion, you are an extreme danger to the community. I don't believe that this has addressed the issues that need to be addressed. And even by their own recommendation they are suggesting that you suffer from issues that simply cannot be addressed at CAPP.

Bartlett timely appealed the district court's order relinquishing jurisdiction. During the pendency of the appeal, the briefing schedule was suspended and Bartlett filed a Rule 35 motion to correct an illegal sentence, asserting for the first time that the alternate judge promised probation. The district court denied Bartlett's Rule 35 motion.

## II.

## ANALYSIS

As noted, Bartlett claims that the district court promised him during the change of plea hearing and sentencing that if he successfully completed the retained jurisdiction program, he would be placed on probation. In addition, Bartlett argues that because he successfully completed the program and obtained a recommendation of probation from correction officials, the district court abused its discretion by relinquishing jurisdiction instead of placing him on probation. He further claims that the district court should have corrected the error by granting his Rule 35 motion.

Bartlett argues that our usual standards of review do not apply to this case. He acknowledges that it is difficult to contend that the originally assigned judge abused its discretion by relinquishing jurisdiction because Bartlett did not argue, at that time, that the alternative judge had promised probation, nor was the transcript of the plea and sentencing hearing submitted to

6

the court when it relinquished jurisdiction. Bartlett is correct that, based upon these circumstances, we could not determine that the district court abused its discretion.

Bartlett also acknowledges that relief is unavailable through the application of our usual Rule 35 motion standards. In *State v. Clements*, 148 Idaho 82, 218 P.3d 1143 (2009), the Idaho Supreme Court examined the scope of a Rule 35 motion:

> Therefore, the term "illegal sentence" under Rule 35 is narrowly interpreted as a sentence that is illegal from the face of the record, i.e., does not involve significant questions of fact or require an evidentiary hearing. This interpretation is harmonious with current Idaho law. As this Court recently noted in *State v. Farwell*, 144 Idaho 732, 735, 170 P.3d 397, 400 (2007), Rule 35 is a "narrow rule." Because an illegal sentence may be corrected at any time, the authority conferred by Rule 35 should be limited to uphold the finality of judgments. Rule 35 is not a vehicle designed to reexamine the facts underlying the case to determine whether a sentence is illegal; rather, the rule only applies to a narrow category of cases in which the sentence imposes a penalty that is simply not authorized by law or where new evidence tends to show that the original sentence was excessive. *See State v. Arthur*, 145 Idaho 219, 223, 177 P.3d 966, 970 (2008).

*Id.* at 86, 218 P.3d at 1147. Bartlett's Rule 35 motion sought to declare his sentence illegal, using transcripts from the plea hearing and sentencing to demonstrate a binding promise of probation which was not honored. Bartlett's argument thus involved significant questions of fact and we cannot say that illegality could be determined "from the face of the record."

Moreover, Bartlett does not argue entitlement to relief as a matter of contract law. On appeal, Bartlett merely alludes to contract principles--urging this Court to place him on probation as an equitable matter and in the nature of specific performance. Bartlett does not cite to any case law or assert how contract law affords him a remedy under these circumstances.

Bartlett also does not argue his due process rights were violated. Bartlett does not assert a constitutional violation, nor does Bartlett cite to the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) factors with respect to his claim. *See Bell v. Idaho Transportation Dep't*, 151 Idaho 659, 665, 262 P.3d 1030, 1036 (2011) (noting Idaho courts must consider the three factors elucidated in *Mathews* for procedural due process challenges). Even an assertion based on fundamental fairness, which is akin to the claim in this case, requires a due process analysis. *See State v. Scraggins*, Docket Nos. 38212/38213, ____ Idaho ____, ____ P.3d ____ (December 20, 2012).

Lastly, Bartlett does not argue the State breached the plea agreement. Bartlett does mention that *State v. Wilson*, 127 Idaho 506, 903 P.2d 95 (Ct. App. 1995) is similar to the present

circumstances.  In *Wilson*, the defendant argued that the district court imposed an illegal sentence because it violated the terms of the binding plea agreement.  *Wilson*, 127 Idaho at 508, 903 P.2d at 97.  Bartlett argues two claims of error under *Wilson*:  (1) the rider review court erred when it did not give Bartlett the opportunity to withdraw his guilty plea; and (2) his plea agreement was not entered knowingly, voluntarily, or intelligently.  However, those arguments could only provide Bartlett with the remedy of withdrawing the plea and not placing him on probation, which is the only relief requested.  Bartlett also does not assert that the alternative judge's comment became part of the plea agreement.  Further, Bartlett does not claim a misunderstanding of the plea agreement.

Ultimately, Bartlett's claim rests on the argument that "in order to maintain the integrity of the justice system" litigants must be able to trust a judge's oral pronouncements.  Bartlett does not cite to any Idaho case for this proposition, instead he solely relies on *United States v. Buchanan*, 59 F.3d 914 (9th Cir. 1995) or an extension of its philosophical underpinnings.  In *Buchanan*, the defendant orally moved to withdraw his guilty plea at the sentencing hearing.  The district court engaged Buchanan and stated that he "could appeal the sentencing findings." *Id.* at 916.  Buchanan did not file a motion to withdraw; instead, the parties filed a modification to the plea agreement.  *Id.*  The modified plea agreement stipulated that Buchanan waived his right to appeal his sentence, as long as his sentence was within the applicable sentencing guidelines.  *Id.*  Despite that waiver clause, the district court, during sentencing, again informed Buchanan that he could appeal his sentence within ten days.  *Id.* at 917.  Buchanan indicated he understood the district court's statements.  *Id.*  Regarding Buchanan's right to appeal the sentence, the Ninth Circuit held:

> Similarly, here, the oral pronouncement must control.  The district court twice stated that Buchanan had a right to appeal his sentence.  Indeed, Buchanan's answer of "Yes, sir" to the district court's question of whether he understood that he had a right to appeal indicates Buchanan's expectation that he could appeal his sentence and evinces a misunderstanding of the substance of his plea agreement. We note also that the government did not object to the district court's erroneous statements.  Thus, Buchanan could have no reason but to believe that the court's advice on the right to appeal was correct.
>
> Litigants need to be able to trust the oral pronouncements of district court judges.  Given the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, we hold that in these circumstances, the district court's oral pronouncement controls and the plea agreement waiver is not enforceable.

*Id.* at 917-18.

Idaho appellate courts have only cited *Buchanan* in one opinion, *State v. Cope*, 142 Idaho 492, 129 P.3d 1241 (2006). There, the Idaho Supreme Court distinguished and restricted the reading of *Buchanan*:

> Cope argues that the district judge's statements override any provision in the plea agreement waiving the right to appeal. Two points surround the court's statements--the meaning of the district judge's statements, and the case law concerning the issue of whether an oral statement made by the court regarding a defendant's appeal rights can "trump" a plea agreement waiving such rights. First, the court's comments regarding an appeal were made after, not before, and not contemporaneously with, Cope's knowing, voluntary, and intelligent acceptance of his Rule 11 agreement in which he waived his right to appeal any matters "preceding the court's entry of judgment and imposition of sentence." The court's comments when read either separately or together, reference what is "appealable." The plea agreement did not preclude appeal of the sentence. There is no conflict between the district judge's statement and the plea agreement.
>
> The Court of Appeals made this statement if the district judge's statements were deemed to be in conflict with the plea agreement:
>
> > The court's later comment could not retrospectively affect Cope's understanding of an agreement to which he had already assented. We note that nearly all federal circuit courts that have addressed this issue have held that a trial court's act of incorrectly informing a defendant of the right to appeal, in conflict with a waiver of appellate review in the plea agreement, has no effect on the validity of the waiver. *See United States v. Fleming*, 239 F.3d 761, 765 (6th Cir. 2001); *United States v. Fisher*, 232 F.3d 301, 303-04 (2nd Cir. 2000); *United States v. Atterberry*, 144 F.3d 1299, 1301 (10th Cir. 1998); *Michelsen*, 141 F.3d at 872-73; *United States v. Ogden*, 102 F.3d 887, 888-89 (7th Cir. 1996); *United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992). The Ninth Circuit Court of Appeals stands alone in holding that a court's oral reference to the right to appeal will trump a defendant's waiver of that right in a plea agreement. *See United States v. Buchanan*, 59 F.3d 914, 917-18 (9th Cir. 1995).
>
> Lest there be confusion in this area, two things are noteworthy: (1) *Buchanan* is factually distinguishable from the instant case; (2) following *Buchanan*, the Ninth Circuit clarified its position regarding a court's oral reference in *United States v. Floyd*, 108 F.3d 202 (9th Cir. 1997) and most recently, *United States v. Lopez-Armenta*, 400 F.3d 1173 (9th Cir. 2005).
>
> After Buchanan waived his right to appeal his sentence in a plea agreement, there was a great deal of confusion surrounding his right to appeal the impending sentence, which occurred concurrently, with a discussion as to whether he should be allowed to withdraw his guilty plea due to an ineffective assistance

of counsel. In this confusion the district judge stated that Buchanan had a right to appeal. The Ninth Circuit narrowly held that: "Given the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, we hold that *in these circumstances*, the district court's oral pronouncement controls and the plea agreement waiver is not enforceable." *Buchanan* at 918 (emphasis added). Clearly, the circumstances in *Buchanan* are different than the circumstances in this case in which the district judge told Cope that he had a right to appeal any "appealable decision "--that decision being Cope's sentence.

*Cope*, 142 Idaho at 498-99, 129 P.3d at 1247-48.

The Idaho Supreme Court's emphasis on the phrase "in these circumstances" certainly indicates a narrow application of *Buchanan*. As mentioned in *Cope*, the Ninth Circuit has also clarified and restricted *Buchanan*. Importantly, almost every circuit court has criticized or refused to apply *Buchanan*. The Sixth Circuit Court of Appeals has been the most critical of *Buchanan*. In *United States v. Rice*, 145 F. App'x 155 (6th Cir. 2005), the Sixth Circuit stated:

This Circuit, however, has "expressly decline[d] to adopt the Ninth Circuit's rule in [the case]" and instead we chose to "add [our] voice to the chorus of criticism of [*Buchanan*]." *United States v. Fleming*, 239 F.3d 761, 765 (6th Cir. 2001). In Fleming, we noted that "no other circuit had adopted the rule of Buchanan, but several have spoken on the issue." *Id.* In refusing to adopt *Buchanan*, we relied on the Fourth Circuit, which has held that "once an appeal waiver is established to be knowing and intelligent, the waiver may not be held unenforceable because of a district court's erroneous statements at a subsequent proceeding." *Id.* (citing *United States v. One Male Juvenile*, 117 F.3d 1415 (4th Cir. 1997)). We held that "even if the district court did recite the language of the Rule 32 notification of the right to appeal intending to modify the plea agreement to resurrect Fleming's right to appeal, the court lacked the power to make such a modification. 'Nothing in the rules even remotely allows the district court to accept a guilty plea but rewrite the plea agreement, even if the modified agreement is more favorable to the defendant.'" *Id.* at 764-65 (quoting *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993)). We have stringently enforced the rule that a court may not participate in the plea agreement process. *Id.* at 765 (citing *United States v. Barrett*, 982 F.2d 193, 195 (6th Cir. 1992)). Effectively rewriting portions of the plea agreement from the bench (even from the court clerk's workspace) would fall squarely into the category of prohibited participation. *Id.* A sentencing court "cannot unilaterally restore a right to appeal that has been waived by the defendant pursuant to a valid plea agreement." *Id.* at 762.

In the instant case, Defendant knowingly and intelligently entered into the plea agreement long before the erroneous statements were made by the district court clerk, and he may not so easily avoid the consequences of the "equally binding promises." *United States v. Bazzi*, 94 F.3d 1025, 1028 (6th Cir. 1996).

10

> Appeals are subject to dismissal based on waiver of appeal provisions. *Fleming*, 239 F.3d at 763-64.

*Rice*, 145 F. App'x at 158-59.

*Buchanan* is of very narrow application and only to the "circumstances" there present, namely, advice regarding appellate rights in conflict with a plea agreement, circumstances not present here. Bartlett claims relief is due in this case to protect the integrity of the courts. While *Buchanan* may have been impliedly based upon a similar principal, *Buchanan* itself does not discuss integrity of the courts as a doctrine or basis upon which any court has provided relief in such circumstances. Although integrity of the courts is not a new concept in Idaho case law, it has never been applied to statements made by a judge, but has been limited to protecting litigants from other litigants. *See State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992) (exclusionary rule); *Gilbert v. Nampa School Dist. No. 131*, 104 Idaho 137, 145-46, 657 P.2d 1, 9-10 (1983) (clean hands doctrine); *Loomis v. Church*, 76 Idaho 87, 277 P.2d 561 (1954) (judicial estoppel); *Weaver v. Millard*, 120 Idaho 692, 819 P.2d 110 (Ct. App. 1991) (attorney disqualification); *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct. App. 1982) (unobjected-to error). We have been directed to no case in which a statement by a judge regarding eventual sentencing disposition, under any circumstances, has been somehow enforced or provided a basis for relief under the auspices of integrity of the courts. While in a general sense we are always vigilant to protect the integrity of the courts, recognizing in a criminal defendant a right to claim entitlement to relief simply under the rubric of the integrity of the courts would open a flood gate with no limitations. Virtually every error, mistake, or misstatement, express or implied, could be said to undermine the integrity of the courts.

We note that, in this case, the originally assigned judge described the statements of the alternative judge as a "pep talk," rather than a promise. Certainly, in some manner, that is true. We do not discern that the alternative judge intended to promise probation, something that judge knew was to be left to the originally assigned judge at a later review hearing. However, as the discussion unfolded it is reasonable to conclude, from Bartlett's perspective, that a successful period of retained jurisdiction would result in probation.[1]

---

[1] We caution the trial courts to be cognizant of the manner in which such statements may be received. We would further recommend that the trial courts expressly advise that probation is not guaranteed, even after a successful rider.

In addition, the originally assigned judge also determined that Bartlett had not been completely successful during the period of retained jurisdiction. Even though the APSI mentioned Bartlett's reliance on "wet brain" to portray himself as a victim, from the point of view of the APSI, Bartlett was successful at least to the extent that he completed programming, had no disciplinary sanctions, and received a recommendation of probation. We note, however, that the originally assigned judge took issue, at the review hearing, with Bartlett's statement that his crime was "just a domestic thing," taking some pains to point out his prior charges, some involving domestic violence. Bartlett's statement could be interpreted as a failure to internalize programming from the retained jurisdiction period.

Under the circumstances of this case, while not without sympathy to Bartlett's position, we are constrained, at least from a procedural basis, from granting the specific performance type of relief which he seeks. We cannot conclude that *Buchanan*, as it has been interpreted, limited, and in some cases rejected, provides an avenue through which to grant the relief Bartlett requests. We note, again, that Bartlett does not seek to withdraw his guilty plea. Based upon the authority provided and reviewed, and under the facts of this case, we cannot say that the district court erred in relinquishing jurisdiction or by denying Bartlett's Rule 35 motion.

## III.

## CONCLUSION

Bartlett has not shown that the district court abused its discretion in relinquishing jurisdiction or erred by denying his Rule 35 motion. The district court's orders relinquishing jurisdiction and denying Bartlett's Rule 35 motion are affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

12